**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

MICHAEL DEREK COMPTON,                    )
individually and on behalf of similarly   )
situated persons,                         )
                                          )    Case No. 5:20-cv-00073-TTC-JCH
                    Plaintiff,            )
          v.                              )
                                          )
NORTH CENTRAL VIRGINIA                    )
RESTAURANTS, INC. d/b/a                   )
"Papa John's Pizza,"                      )
                                          )
                    Defendant.            )

**JOINT MOTION FOR (1) APPROVAL OF A COLLECTIVE ACTION**
**SETTLEMENT, (2) PRELIMINARY APPROVAL OF A CLASS ACTION**
**SETTLEMENT, (3) APPROVAL OF NOTICE TO PUTATIVE CLAIMANTS, AND (4)**
**SCHEDULING A HEARING FOR FINAL APPROVAL OF THE PARTIES' CLASS**
**ACTION SETTLEMENT AGREEMENT, AND MEMORANDUM IN SUPPORT**

COME NOW the parties, by and through their respective attorneys, and jointly move the Court

for (1) approval of the parties' Fair Labor Standards Act ("FLSA") collective action settlement,

(2) preliminary approval of the parties' Virginia Minimum Wage Act ("VMWA") class action

settlement agreement; (3) approval of notice to the putative claimants; and (4) scheduling a hearing

for final approval of the parties' class action settlement agreement.

A copy of the parties' Settlement Agreement and Release ("Settlement Agreement") is

attached as "Exhibit 1." The proposed notice of class action settlement is attached as "Exhibit 2."

The declarations of Plaintiff's attorneys Mark Potashnick and Kevin J. Dolley in support of this

motion and brief are attached as "Exhibit 3" and "Exhibit 4" respectively.  The parties have reached

a settlement on behalf of all collective and class members.  The settlement meets the standards for

approval of an FLSA settlement and for granting preliminary approval of a Rule 23 class action settlement.

## Facts and Procedural History

Defendant North Central Virginia Restaurants, Inc. ("NCVR" or "Defendant")) owns and operates 25 Papa John's pizza stores in Virginia, Maryland and West Virginia.  Plaintiff worked for Defendant as a pizza delivery driver from August 2019 to September 2020.

On October 19, 2020, Plaintiff filed suit against NCVR alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the FLSA (nominal wages – unreimbursed vehicle costs = subminimum net wages).  ECF Doc. # 1.  On January 25, 2021, Plaintiff filed his First Amended Complaint ("FAC"), adding allegations that NCVR violated the FLSA's overtime pay requirement by miscalculating the delivery driver's overtime pay rate and violated the VMWA's minimum wage requirement resulting form under-reimbursed vehicle costs incurred on the job.  ECF Doc. # 25.  Plaintiff alleged that Defendant applied the same reimbursement formula and same overtime pay calculation to all of its delivery drivers during the recovery period.  *Id.*

Plaintiff moved for conditional certification of the FLSA claims.  ECF Doc. #'s 42 & 44.  NCVR did not oppose those motions.  ECF Doc. #'s 48 & 49.  The Court conditionally certified the FLSA claim on May 17, 2021.  ECF Doc. # 51.  A total of 93 delivery drivers joined the FLSA claim by filing their consent to join forms.

On October 8, 2021, Plaintiff moved for class certification of the VMWA claim under Fed. R. Civ. P. 23.  ECF Doc. # 95.  NCVR did not oppose that motion.  ECF Doc. # 100.  The Court certified the VMWA claim under Fed. R. Civ. P. 23 on December 1, 2021.  ECF Doc. # 105.

The parties conducted extensive discovery and investigation of the claims, which permitted them to evaluate the claims and defenses and calculate various damage scenarios prior to negotiating the settlement now before this Court. The parties produced initial and supplemental disclosures under Fed. R. Civ. P. 26(a)(1). They each propounded, and responded to, written discovery requests pursuant to Fed. R. Civ. P. 33 and 34. Plaintiff's counsel deposed NCVR's primary owner and operator regarding key work time, pay, delivery, reimbursement and overtime policies and practices. Both sides hired vehicle costing expert witnesses who produced reports and testified in depositions.

Plaintiff moved to exclude NCVR's vehicle costing expert. ECF Doc. # 86. NCVR moved to continue briefing on Plaintiff's motion. ECF Doc. # 87. The Court continued that briefing. ECF Doc. # 89.

Plaintiffs synthesized Defendant's voluminous work time, pay, delivery and reimbursement data into spreadsheet damage models showing weekly damage calculations for each delivery driver.

Plaintiff's counsel learned through discovery that overtime damages were very small due to the rarity of NCVR's delivery drivers working overtime. In the meantime, Defendant fully compensated the delivery drivers who worked overtime during the recovery period.

The parties directly negotiated a settlement of the remaining claims through a series of telephone conversations and emails spanning September 27, 2021 through December 16, 2021. During that time, the parties exchanged numerous successive offers and demands. Named Plaintiff Michael Derek Compton actively participated in every round of negotiations.

The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Ex. 3, Declaration of Mark Potashnick,

at ¶¶ 1-7 (hereinafter "Potashnick Decl."); Ex. 4, Declaration of Kevin Dolley (hereinafter "Dolley Decl."), at ¶¶ 2-6.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals.  Potashnick Decl. ¶ 16; Dolley Decl., ¶ 14.

**Key Settlement Terms**

The parties have executed a Settlement Agreement and Release.  Ex. 1.  In sum, they agreed to settle all putative class members' wage and hour claims by NCVR establishing a settlement fund inclusive of attorney's fees, costs and a service award.  Ex. 1, §§ 4(A) & (G).  That does not include the amount of overtime wages paid by NCVR after Plaintiff asserted the overtime pay claim.

The net settlement proceeds after attorney's fees, costs and service award will be allocated to all FLSA collective action members and VMWA class action members pursuant to an equitable formula based on the proportion of their respective damages calculated during the suit to the total damage calculations, with each FLSA collective action member and each VMWL class action member receiving at least $25.00.  The funds attributable to any uncashed checks will be donated to the American Cancer Society.  *Id.*, §§ 4(D) & (E).

The release binding FLSA collective action members and VMWA class action members who do not opt out is limited to wage and hour claims:

> [A]ny and all individual, class, or collective wage-and-hour or overtime claims that were or could have been brought based on the specific factual allegations contained in the Lawsuit, that occurred or are alleged to have occurred at any time through the Approval Date, including without limitation claims for off-the-clock work, unpaid wages, unpaid overtime compensation and associated penalties, liquidated damages, interest, attorneys' fees or litigation costs or expenses, and further

including all wage and hour claims under the Fair Labor Standards Act, the Virginia Minimum Wage Law, and the common law.

*Id.*, § 3(L).

Based on his service to the class and collective in initiating this case and working diligently with counsel to investigate and prosecute this litigation, named Plaintiff Compton seeks a modest service award of $5,000.00. *Id.*, § 4(B).

Subject to this Court's approval, Plaintiff's counsel will receive fees equal to one-third (1/3) of the gross settlement amount plus out-of-pocket costs totaling $63,774.79. Defendant does not oppose or object to this request for attorneys' fees and costs. *Id.*, § 4(C).

The parties will jointly select a settlement administrator, whose fees will be paid from the gross settlement amount. *Id.,* § 7.

A notice of collective action settlement (the "Notice") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement and the Notice. Ex. 2. The Notice explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each delivery driver's right to object to the settlement or exclude him/herself from the settlement. Ex. 2.

**Argument**

## I.    Class / Collective Action Certification

When parties reach a settlement agreement prior to class certification, courts must ratify both the propriety of certification and the fairness of the settlement. *Hall v. Higher One Machs., Inc.,* 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sept. 26, 2016) (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 621 (1997)). The Court previously granted class certification of the VMWA claim. ECF Doc. # 105.

As to the FLSA claim, courts within the Fourth Circuit recognize three factors considered in final certification of an FLSA collective action: (1) "'the disparate factual and employment settings of the individual plaintiffs,'" (2) "'the various defenses available to [the] defendant which appear to be individual to each plaintiff,'" and (3) "'fairness and procedural considerations.'" *Alloways v. Cruise Web, Inc.,* 2019 U.S. Dist. LEXIS 71481, at \*14 (D. Md. Apr. 29, 2019) (quoting *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007)).

Here, all class members held the same job, performed the same primary job duty of delivering pizzas and other food to NCVR's customers using their personal vehicles, were compensated by similar hourly pay rates, and drove similar delivery distances. Defendant reimbursed all of its delivery drivers with the same or comparable rate per mile and/or delivery and did not track any of their actual vehicle costs. The delivery drivers' claims are based on the same legal theory and common sources of proof. Plaintiff has presented a common legal theory applicable as to all of the delivery drivers: employees may recover vehicle costs when the employer's estimation of such costs is unreasonable and the shortfall results in minimum wage deficits. *See, e.g., Perrin v. Papa John's Int'l., Inc. ("Perrin I"),* 2013 U.S. Dist. LEXIS 181749, at \*20-24 (E.D. Mo. Dec. 31, 2013) (explaining development of applicable law and citing cases); *Benton v. Deli Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 135522, at \*42-48 (N.D. Ga. Aug. 8, 2019).[1]

## II. Approval of the Settlement

"Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, the courts generally have followed a two-step procedure." *Scott v. Family Dollar Stores, Inc.,* 2018 U.S. Dist. LEXIS 41908, at \*10 (W.D.N.C. Mar. 14, 2018) (citing *Airline Pilots Ass'n.*

---

[1] As provided by the Settlement Agreement, the Defendant in no way admits to the suitability of this Lawsuit for class or collective action treatment, other than for purposes of settlement. *See* Section 8(a).

*v. Velez,* 2016 U.S. Dist. LEXIS 120714, at *15-16 (W.D.N.C. Sept. 7, 2016)). "First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Id.* "Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a 'fairness' hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id.*, 2018 U.S. Dist. LEXIS 41908, at *10-11. "The ultimate purpose of the fairness hearing is to determine if the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*, at *11. The purpose of preliminary approval is merely to determine that the proposed settlement agreement is "sufficiently within the range of reasonableness." *Robinson v. Carolina First Bank NA,* 2019 U.S. Dist. LEXIS 26450, at *21 (D.S.C. Feb. 14, 2019) (citing cases).

To determine whether a proposed class action settlement agreement is fair and reasonable, a "court considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance by defendant." *Pizzella v. Apex Pipeline Servs.,* 2019 U.S. Dist. LEXIS 194516, at *9 (S.D. W. Va. Nov. 8, 2019) (citing *Harper v. ELK Run Coal Co., Inc.,* 2012 U.S. Dist. LEXIS 76876, at *8-9 (S.D. W. Va. Jun. 4, 2012)). District Courts within this Circuit typically consider the same factors in determining approval of FLSA collective action settlements, plus the existence of a *bona fide* dispute between the parties. *Id.; see also Hackett v. ADF Rest. Invs.,* 259 F.Supp.3d 360, 365-67 (D. Md. Dec. 19, 2016) (applying same factors, plus determining

existence of *bona fide* dispute, in approving settlement in similar claim against pizza delivery company based on alleged minimum wage violations resulting from under-reimbursed vehicle costs). Here, the applicable factors favor preliminary approval of both the class and collective action settlements.

Unlike a Rule 23 settlement, FLSA settlements may be approved in a one-step process, and no final fairness hearing is required. *See, e.g., Hager v. Omnicare, Inc.,* 2021 U.S. Dist. LEXIS 219456, at *12 n.2 (S.D. W. Va. Nov. 15, 2021) (citing cases holding that FLSA settlements may be approved in one step); *see also, e.g., Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, at *7 (N.D. Ind. Jan. 4, 2019) (citing cases); *Carr v. Bob Evans Farms,* 2018 U.S. Dist. LEXIS 228221, at *4 (N.D. Ohio Jul. 27, 2018); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, at *4 n.1 (D. Ariz. Jun. 9, 2017).

"Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes." *Faile v. Lancaster Cnty.,* 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.,* 2009 U.S. Dist. LEXIS 89129, at *27 (E.D. Va. Jun. 23, 2009)). "'Although the district court has broad discretion in approving a settlement of a class action case, there is a 'strong presumption in favor of finding a settlement fair.'" *Id.* A "settlement [fairness] hearing is not a trial, and [the] court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law[.]'" *Id.* (edits in original, quoting *Lomascolo,* 2009 U.S. Dist. LEXIS 89129, at *28). The court "'is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing … and absent fraud, collusion or the like, [the] court should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89129, at *28-29).

**Factors 1 & 2:  Extent of Discovery Completed and the Stage of the Proceedings**

Plaintiff's claims settled after extensive discovery including two rounds of initial disclosures, written discovery responses by both sides, NCVR's voluminous data disclosures, a corporate deposition pursuant to Fed. R. Civ. P. 30(b)(6), expert disclosures and reports, and expert depositions by both sides.  NCVR's disclosures included extensive "core evidence" utilized in minimum wage / vehicle reimbursement claims to determine liability and value the claims:  work time, pay, delivery and reimbursement data.  Plaintiff's counsel computer mapped NCVR's voluminous delivery data to calculate the average delivery distance at each of NCVR's 25 stores. The data was synthesized into dynamic spreadsheet damage models calculating damages for each delivery driver on a weekly basis.  Using that model, the parties were able to evaluate liability issues and calculate various damage scenarios.  Using those spreadsheets, the parties were also able to laser-focus their settlement efforts.  Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**Factor 3:  Absence of Fraud or Collusion**

The parties engaged in nearly three months of back-and-forth negotiations by telephone and email.  The settlement was achieved only as the result of several rounds of negotiations.  Thus, no fraud or collusion occurred.  *See, e.g., Hutton v. Nat'l Bd. of Exam'rs. in Optometry, Inc.,* 2019 U.S. Dist. LEXIS 120558, at *17-18 (D. Md. Jul. 15, 2019) (recognizing that multiple rounds of negotiations indicates a settlement negotiated at arm's length).

**Factors 4 & 5:  Experience and Opinions of Counsel**

Based on their ample experience litigating similar claims across the nation (detailed below), class counsel has recommended this settlement without hesitation as in the best interests of the

class members. Therefore, this factor weighs strongly in favor of approval. *See Finn v. FMC Corp.,* 528 F.2d 1169, 1173 (4ᵗʰ Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement.").

### Factor 6: The Probability of the Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

Plaintiff's claim is supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt his evidence over NCVR's competing evidence and arguments. As courts recognize, the claims may depend on competing expert vehicle costing testimony. *Perrin v. Papa John's Int'l., Inc. ("Perrin II"),* 2014 U.S. Dist. LEXIS 133974, at *12 (E.D. Mo. Sept. 24, 2014) (recognizing battle of vehicle costing experts); *Villalpando v. Exel Direct, Inc.,* 2016 U.S. Dist. LEXIS 53773, at *45 (N.D. Cal. Apr. 21, 2016). Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval."). Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986).

Also, Plaintiff's claim may depend on what test the Court decides to apply. *Compare, e.g., Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12 (battle of experts over reasonableness of employer's vehicle reimbursement rate) *with Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790, at *5-22 (S.D. Ohio Nov. 5, 2019) (employer must either reimburse actual vehicle costs or reimburse at the IRS rate).

Predicting how a jury would weigh the evidence here is particularly difficult. Although several similar claims have been arbitrated, no known benchmark exists for how a jury might

decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

The settlement provides each class member with the chance to obtain meaningful relief. The average recovery, after the service award, fees, litigation costs and administrative costs is projected to be $308.86. Notably, all net recovery will be paid out; this is not a "claims made settlement" and there is no reversion to Defendant. The settlement provides the delivery drivers meaningful relief now, rather than the mere possibility of recovery at some unknown time in the future. Moreover, this is a classic compromise as the recovery equates to more than NCVR's calculation of damages, but less than Plaintiff's calculation. Additionally, Plaintiff's claims resulting in NCVR's prior voluntary payment of overtime wages due.

### Additional Factor for FLSA Collective Action:  Existence of *Bona Fide* Dispute

"[A]n FLSA claim typically cannot be settled without a determination by the court that the settlement is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Connery v. Winchester Massage, LLC,* 2019 U.S. Dist. LEXIS 229654, at *1 (W.D. Va. Jun. 20, 2019) (quoting *Poulin v. Gen. Dynamics Shared Res.*, 2010 U.S. Dist. LEXIS 47511, at *2 (W.D. Va. May 5, 2010) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

 The Court should readily conclude that the parties' settlement here constitutes a fair and reasonable resolution of a *bona fide* dispute. "'[A]pproval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements.'" *Hall,*

2016 U.S. Dist. LEXIS 131009, at *11 (quoting *DeWitt v. Darlington Cnty.,* 2013 U.S. Dist. LEXIS 172624, at *10-11 (D.S.C. Dec. 6, 2013)).[2]

A settlement addresses a *bona fide* dispute when "there are FLSA issues actually in dispute." *Portillo v. Intipuqueno Rest.,* 2019 U.S. Dist. LEXIS 32552, at *3-4 (D. Md. Feb. 28, 2019) (citing *Saman v. LBDP, Inc.,* 2013 U.S. Dist. LEXIS 83414, at *7 (D. Md. Jun. 13, 2013) (citing *Lynn's Food Stores*, 679 F.2d at 1355). Here, Plaintiff alleged that under-reimbursed automobile expenses caused minimum wage violations. NCVR denies Plaintiff's substantive allegations, asserts that its delivery drivers were reasonably reimbursed for vehicle costs, and contends that its delivery drivers were compensated at or above the applicable minimum wage. Thus, the claims were actually in dispute.

Defendant produced, and the parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, NCVR could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with NCVR about a reasonable reimbursement rate, the delivery drivers would obtain no recovery whatsoever. These facts clearly demonstrate a *bona fide* dispute.

The settlement is fair and reasonable for the same reasons explained above.

## IV.    Named Plaintiff Compton Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $5,000.00 to the named Plaintiff, Michael Derek Compton. Ex. 1, § 4(B). Service awards, also known as "incentive

---

[2] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

awards" or "class representative awards," "'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 578 (E.D. Va. 2016) (quoting *Manuel v. Wells Fargo Bank,* 2016 U.S. Dist. LEXIS 33708, at *17 (E.D. Va. Mar. 15, 2016)); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Here, Mr. Compton substantially assisted counsel in achieving this settlement on behalf of all of Defendant's delivery drivers who have been employed during the recovery period.  He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all Defendant's delivery drivers and to obtain a substantial recovery on their behalf.  He participated throughout each round of negotiations, and vigorously negotiated on behalf of all of Defendant's delivery drivers.  Potashnick Decl., ¶ 15.  The other delivery drivers have substantially benefitted from Mr. Compton's efforts. In light of these efforts, a modest service award is justified.  *See, e.g., Burke v. Shapiro, Brown & Alt, LLP,* 2016 U.S. Dist. LEXIS 65120, at *17 (E.D. Va. May 17, 2016) (observing that "several district courts have adopted the test used by the Seventh Circuit that instructs courts to examine 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'") (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Kirven v. Central States Health & Life Co.*

*of Omaha,* 2015 U.S. Dist. LEXIS 36393, at *35 (D.S.C. 2015) (applying the "Cook factors" to find reasonable an incentive award of $7,563.27).

The award also falls well within the range of other service awards typically approved by courts in this Circuit. *See, e.g., Smith v. Toyota Motor Credit Corp.,* 2014 U.S. Dist. LEXIS 141402, at *4-5 (D. Md. Oct. 2, 2014) (quoting *Cook* in finding reasonable an incentive award of $5,000.00 for each named plaintiff); *Decohen v. Abbasi,* 299 F.R.D. 469, 483 (D. Md. 2014) (quoting Cook to approve a $10,000.00 incentive award to the named plaintiff); *Boyd v. Coventry Health Care, Inc.,* 299 F.R.D. 451, 468-69 (D. Md. 2014) (awarding $5,000.00 service awards to each of five named plaintiffs); *Graham v. Hall's Southern Kitchens, LLC,* 2019 U.S. Dist. LEXIS 121615, at *7-8 (D.S.C. Jul. 22, 2019) (approving $5,000.00 service award); *Nicholes v. Combined Ins. Co.,* 2019

Defendant does not oppose the service award.

## V. Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. Ex. 1, § 4(C). The FLSA and VMWA both contain fee shifting provisions. 29 U.S.C. § 216(b); Va. Code Ann. § 40.1-28.12. The Fourth Circuit recognizes that the purpose of fee shifting is to "'enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Brandon v. Guilford Cty. Bd. of Elec.*, 921 F.3d 194, 199-200 (4th Cir. 2019) (quoting *Kay v. Ehrler,* 499 U.S. 432, 436 (1991)). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is

entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Burnley v. Short,* 730 F.2d 136, 141 (4th Cir. 1984) (citing 29 U.S.C. § 216(b)).  The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees equal to of one-third (1/3) of the gross settlement amount.  Courts in this Circuit have approved the same percentage, including approvals by district courts within this Circuit in the same claim against other pizza delivery companies. *See, e.g.*, *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-00170-D (D.S.C.. Aug. 28, 2020) (ECF Doc. # 24) (approving one-third attorney's fees in same claim against pizza delivery company alleging minimum wage violations resulting from under-reimbursed vehicle costs); *Dotson v. P.S. Mgmt., Inc.,* 2020 U.S. Dist. LEXIS 250227, at *11-17 (S.D. W. Va. Apr. 7, 2020) (same); *Hackett,* 259 F.Supp.3d at 368-69 (same); *DeWitt,* 2013 U.S. Dist. LEXIS 172624, at *21-27 (approving one-third attorney's fees); *Faile,* 2012 U.S. Dist. LEXIS 189610, at *24-25 (same); *Smith v. Krispy Kreme Doughnut Corp.,* 2007 U.S. Dist. LEXIS 2392, at *6 (M.D.N.C. Jan. 10, 2017) (recognizing that "[i]n this jurisdiction, contingent fees of one-third (33.3%) are common.").

Here, the named Plaintiff agreed to pay 35% of any collective action settlement as a fee, given the relatively small size of the case.  However, Plaintiff's Counsel voluntarily agreed to reduce that fee to one-third (1/3) as part of the settlement.

To ensure a fee award is reasonable, this Circuit considers "the *Johnson* factors:"

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Randolph v. Powercomm Constr., Inc.,* 715 Fed. Appx. 227, 230 & n.2 (4th Cir. 2017) (citing

*Johnson v. Ga. Hwy. Express Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

### *Johnson* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")); *see, e.g., Wass v. NPC Int'l*, Inc., 688 F.Supp.2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiff's Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

Within this Circuit, Judge Messitte of the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.
>
> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett*, 259 F. Supp. 3d at 368; *see also Dotson*, 2020 U.S. Dist. LEXIS 250227, at *14-15 (quoting *Hackett*, 259 F.Supp.3d at 368.).  Within this Circuit, *Dotson*, decided by the Southern District of West Virginia, further explained that "[c]hallenging pizza delivery companies on the basis of unpaid minimum wages in the context of partially unreimbursed expenses is a complex area of the law, an area to which plaintiffs' counsel has substantially contributed."  *Id.*, 2020 U.S. Dist. LEXIS 250227, at *15; *see also, e.g., Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, at *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts, obtained by Plaintiff's counsel, may have helped them resolve this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a

similar argument, while these prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial may be expert-intensive and thus costly. Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all class members. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour litigation.  Potashnick Decl., ¶¶ 1-7; Dolley Decl., ¶¶ 2-6.  In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Johnson* factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

### *Johnson* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Brown,* 318 F.R.D. at 577 (following *Hensley*).  This Court has particularly noted that "[c]hallenging compensation for pizza delivery drivers under the FLSA is not a cut and dried affair." *Hackett*, 259 F. Supp. 3d at 369; *see also, e.g., Dotson*, 2020 U.S. Dist. LEXIS 250227, at *15 (recognizing that challenging vehicle reimbursement rates "is a complex area of the law.").  *Hackett* found that under the *Johnson* factors it is particularly appropriate to award Plaintiffs' counsel lodestar rates because due to the uncertain nature of challenging compensation for delivery drivers under the FLSA, "it is quite likely that, but for this lawsuit, [Defendants'] drivers in Defendants' stores would not have known that they had a viable cause of action and thus, in the end, received more compensation than they anticipated." *Id.*

18

As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all.  Thus, the amount agreed to by the parties following contentious litigation and subsequent negotiations is a very successful result for Plaintiff.  The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class.  Some class members will receive substantial payments for their alleged unreimbursed vehicle expense.  And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – no class member will receive less than $25.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 35% of the common fund. However, Plaintiff's Counsel cut their percentage to one-third (1/3) in an effort to resolve this case and increase the amount paid to Plaintiffs.

### *Johnson* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

Plaintiffs' counsel's firms combined spent over 460 hours litigating this case with no assurance of any recovery at all.  Potashnick Decl., ¶¶ 9-10 & Exhibit A thereto; Dolley Decl., ¶ 7 & Exhibit A thereto.  This includes, but is not limited to, time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the named Plaintiff and by Defendant; propounding written discovery; answering written discovery; moving for conditional certification of the FLSA claim; moving for class certification of the VMWA claim; analyzing Defendant's work time, pay, delivery, mileage and reimbursement data; synthesizing that voluminous data into

computerized damages models; communicating with the named Plaintiff, working with Plaintiff's expert to prepare a report and testify at deposition; preparing for depositions; moving to exclude Defendant's expert; deposing Defendant's vehicle costing expert, negotiating the settlement; reviewing settlement drafts; drafting approval filings; and seeking Court approval of the settlement. Potashnick Decl., ¶¶ 8-10 & Exhibit A thereto; Dolley Decl., ¶ 7 & Exhibit A thereto.

Plaintiff's lead-counsel's lodestar is based on their recently approved hourly billing rates of $500.00 per hour for Mr. Potashnick and $450.00 per hour for Mr. Dolley. Potashnick Decl., ¶ 9; Dolley Decl., ¶ 6. Mr. Potashnick has been in private practice for 29 years and Mr. Dolley has been in private practice for 20 years. Potashnick Decl., ¶¶ 2-3; Dolley Decl, ¶ 2.

Mr. Potashnick has been approved at similar fee rates by district courts around the nation. *See, e.g., Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (finding Mr. Potashnick's $500.00 hourly rate to be "reasonable"); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (fee and cost petition seeking $500.00 per hour for Mr. Potashnick); *Sagendorf v. Quality Huts, LLC,* 2021 U.S. Dist. LEXIS 213619, at *11 (N.D. Ind. Nov. 3, 2021) (approving Mr. Potashnick's fees based $500.00 per hour rate); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga. Jan. 28, 2020), at 8 (finding Mr. Potashnick's rate of $500.00 per hour to be "reasonable"); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.) (ECF Doc. # 138), at 5, 12 & 13 (seeking fees for Mark Potashnick at rate of $500.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 15, 2019) (ECF No. 35) (approving recovery of Mark Potashnick's fees at $500.00 per hour rate); *Hidalgo v. Quality Huts Midwest, LLC,* AAA Case No. 01-20-0010-0139 (Gilbert Oct. 27, 2021) (same); *Morse v. Parts Authority, LLC,* AAA Case No. 01-20-0003-8372 (Modica Jul. 23, 2021), at 4-6 (same); *Omelet v. Parts Authority, LLC,* AAA

Case No. 01-20-0003-8239 (Pines May 3, 2021) (same); *Nelson v. PJ Cheese, Inc.,* AAA Case

No. 01-19-0001-5314 (Kimmel) (same); *see also Pannell v. Parts Authority,* LLC, AAA Case No.

01-20-0009-6223 (Weinstock Oct. 25, 2021) (approving Mr. Potashnick's rate of $919.00 per

hour); *Ralph v. HAJ, Inc.,* 2021 U.S. Dist. LEXIS 59813, at *18 (S.D. Cal. Mar. 29, 2021)

(approving fees at $575.00 per hour rate).

Mr. Dolley has been approved at similar fee rates by district courts around the nation. *See, e.g.*,

*Banks v. Pyramid Consulting, Inc.*, 2019 WL 338493, at *4 (S.D. Cal.  2019) ($450 per hour for

Managing Principal Attorney Kevin J. Dolley); *Frick v. Henry Industries, Inc.*, No. 13-2490-JTM-

GEB, ECF Nos. 249-2, 251 (D. Kan. Jan. 3, 2018) (approving $400 hourly rate in a wage and hour

case for billable hours from 2013 through 2017); *Brown v. Reddy Ice Corp.*, No. 4:14-CV-1786-

RLW, 2016 WL 2930933, at *4 (E.D. Mo. May 19, 2016) (confidential settlement with the court

noting that it "finds the amount is based on a reasonable hourly rate"); *U.S. ex rel. Peterson v.

Sanborn Map Co., Inc.*, No. 4:11-CV-000902-AGF, 2014 WL 2815592 (E.D. Mo. June 23, 2014)

(approving rate of $350 per hour); *Adams v. City of Manchester*, No. 4:11-CV-1309-TCM, 2013

WL 4776280 (E.D. Mo. Sept. 6, 2013) (approving rate of $350 per hour); *Langella v. Transcend

Services, Inc.*, 2016 WL 11578946, at *3 (M.D. Fla. 2016) (noting Mr. Dolley possess "extensive

practice experience, focusing on clients in FLSA collective actions and wage and hour class

litigation, overtime and minimum wage, and employment discrimination, among other practice

areas"); *Annette Speraneo v. BJC Health Systems, Inc.*, Cause No. 1322-CC09701 (Mo. Cir. Ct.

Mar. 6, 2020); *Rawa v. Monsanto Company*, 2018 WL 2389040, at *9 (E.D. Mo. 2018).

A "lodestar cross-check" reflects a multiplier of 1.12 based on counsel's time spent through

February 2022 and not including local counsel's time (($124,737.50 Weinhaus & Potashnick

lodestar + $71,160.00 Dolley Law, LLC lodestar) = $195,897.50 / $235,000.00 fee recovery =

1.12 multiplier. Potashnick Decl., ¶¶ 9-10 & Exhibit A thereto; Dolley Decl., ¶ 7 & Exhibit A thereto. Of course, that multiplier will decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class members. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Fangman v. Genuine Title, LLC,* 2017 U.S. Dist. LEXIS 126772, at *17 (D. Md. Aug. 10, 2017) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.") (citing *Singleton v. Domino's Pizza, LLC,* 976 F.Supp.2d 665, 681 (D. Md. 2013) (quoting *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 261 (E.D. Va. 2009)).

Notably, this work naturally precluded counsel from pursuing other litigation opportunities.

### *Johnson* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-00170-D (D.S.C.. Aug. 28, 2020) (ECF Doc. # 24) (approving one-third attorney's fees in same claim against pizza delivery company alleging minimum wage violations resulting from under-reimbursed vehicle costs); *Dotson,* 2020 U.S. Dist. LEXIS 250227, at *11-17 (same); *Prince v. Perfect Delivery, Inc.*, Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62), at 10-11 (same); *Hackett,* 259 F.Supp.3d at 368-69 (same); *DeWitt,* 2013 U.S. Dist. LEXIS 172624, at *21-27 (approving one-third attorney's fees); *Faile,* 2012 U.S. Dist. LEXIS 189610, at *24-25 (same); *Smith,* 2007 U.S. Dist. LEXIS 2392, at *6 (recognizing that "contingent fees of one-third (33.3%) are common.").

Notably, the percentage method is the preferred method of fee recovery because, among other aspects, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendant's delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## VI.    The Costs Incurred Should Be Awarded as Reasonable

Like fees, an award of reasonable litigation costs is mandatory in FLSA claims. 29 U.S.C. 216(b). This may include "reasonable out of pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Carlos Humberto Cab Siquic v. Star Forestry, LLC,* 2016 U.S. Dist. LEXIS 54446, at *8-9 (W.D. Va. Apr. 22, 2016) (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). "In the Fourth Circuit, costs may be awarded beyond the limitations of § 1920 as part of the reasonable attorneys' fee specifically authorized by the FLSA." *Gregory v. Belfor USA Grp., Inc.*, 2014 U.S. Dist. LEXIS 14296, *8-9 (E.D. Va. Feb. 4, 2014) (citing *Herold v. Hajoca Corp.,* 864 F.2d 317, 323 (4th Cir. 1988)). Plaintiffs' counsel request reimbursement for $63,7774.79 in out-of-pocket costs as contained in Exhibit 3. Potashnick Decl. ¶ 13 & Exhibit B thereto; Dolley Decl. ¶ 8 & Exhibit

B thereto. These expenses were reasonably and necessarily incurred in the prosecution of the case, are the types of expenses customarily included in a bill for professional services and not absorbed as part of firm overhead. *Id.*

## VII.    The Court Should Approve the Proposed Collective Action Class Notice

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the notice of settlement attached as "Exhibit 2" will be mailed to class members at their last known addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement. The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting objections and opting out. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the named Plaintiff who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a) finally certifies the collective action;

(b) approves the collective action settlement as a reasonable compromise of a *bona fide* dispute;

(c) preliminarily finds that the parties' settlement of the VMWA class action appears to be fair, reasonable, and adequate as to members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of the class settlement by this Court;

(d) grants preliminary approval of the VMWA class action settlement;

(e) approves as to form and content the parties' proposed notice as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(f) orders that each class member be given a full opportunity to object to, or opt-out of the Settlement Agreement, and to participate at the final approval hearing;

(g) schedules a final fairness hearing; and

(h) awards such further relief as the Court deems equitable and just.

Respectfully submitted,

**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**DOLLEY LAW, LLC**
Kevin J. Dolley (MO Bar 54132)
*Pro Hac Vice*
12977 N. Outer Forty Drive, Suite 230
St. Louis, Missouri 63141
Telephone: (314) 645-4100
kevin@dolleylaw.com

**LAW OFFICES OF CARY
POWELL MOSELEY, PLLC**
Cary Powell Moseley
401 Otey Street
Bedford, Virginia 24523
Telephone: (540) 583-5362
cary@carymoseley.com

*Attorneys for Plaintiff*

**ECCLESTON & WOLF**

William L. Mitchell (VSB # #48585)
Michelle Benitez Jessee (VSB # 80125)
*/s/ William Mitchell*
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
Telephone: (703) 218-5330
wmitchell@ewva.com
jessee@ewva.com

***ATTORNEYS FOR DEFENDANT***


**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.


*/s/ Mark Potashnick*